## DAVID RICH *versus* THOMAS LORD.

In construing releases, especially where the same instrument is to be executed by various persons, standing in various relations and having various kinds of claims against the releasee, general words, though the most comprehensive, are to be limited to particular demands, where it manifestly appears, by the consideration, by the recital, by the nature and circumstances of the demands to one or more of which it is proposed to apply the release, that it was so intended to be limited by the parties.

A mortgager of real estate assigned his property upon the trust, that the assignees should, in the first place, pay certain of his debts in full, including a sum for the payment of which the mortgagee and one of the assignees were liable as sureties of the assignor, but not secured by the mortgage, and then the claims of such other creditors as should become parties to the assignment, *pro ratâ*, and embodied in the assignment a schedule of the property assigned, in which the real estate was described as subject to the mortgage, and also a schedule of the unpreferred creditors, in which the mortgagee was not mentioned ; and the mortgagee executed a release, by which the creditors released the assignor " from all and singular their several claims and demands against him, of every name and nature." It was *held,* that the mortgagee did not thereby release the mortgage debt.

f the owner of an undivided portion of land, mortgage it, and the land remain in the possession of the mortgager or of a co-tenant, the mortgagee is entitled to partition, the possession of the mortgager or co tenant being equivalent to possession by the mortgagee.

PETITION for partition. The petitioner represented, that he was seised in fee of one undivided half of certain land, to-

gether with a fulling mill, carding machine and clothier's shop, and the privileges and appurtenances thereof.

Rich
v.
Lord.

The respondent pleaded, that the petitioner was not so seised ; and issue was joined thereon.

By an agreed statement of facts it appeared, that Madison D. Erskine and John Erskine junior were originally seised of the whole of the premises in question, as tenants in common, in equal parts ; that on March 1st, 1831, Madison mortgaged one undivided half thereof, to the petitioner, to secure the payment of three notes made by the mortgager and John Erskine junior, and payable at a time which had not yet arrived ; and that the petitioner had never been in possession, unless the possession of the mortgager or his cotenant was equivalent to a possession by the petitioner.

It further appeared, that on the 19th of October, 1832, the Erskines assigned their property to Alanson White, Asahel H. Bennett and Asaph Butterfield, upon the trust, that the assignees should sell the goods and chattels within one year from the date of the assignment, and collect the debts, and out of the proceeds thereof, after paying all expenses and charges incurred in or about the premises, and also several preferred debts, including "the sum of $ 500 to Asaph Butterfield and David Rich, who stand jointly and severally enagged for us, the said John Erskine junior and Madison D. Erskine, in one note for that sum, to the Brattleborough bank, due and owing, with interest to the time of such payment," should pay the claims of the several persons named in a schedule annexed, together with all others to whom the assignors were justly indebted, *pro rat*, provided they became parties to the assignment within thirty-five days from the date thereof. This part of the instrument of assignment was executed by the assignors. Then followed a schedule of the property, which, after describing the premises in question, continued as follows : " one undivided half of said land, buildings, fulling mill, one carding machine, clothier's shop, water and other privileges mentioned above, are subject to a mortgage [to the petitioner] of $ 1217·02, with interest, annually, from the first day of March, 1831 ;" a schedule of the unpreferred creditors, " as far as recollected," they being few in number, and the name of the

Rich
*v*
Lord.

petitioner not being mentioned therein ; and an acceptance of the trusts and a covenant for the faithful performance of them, executed by the assignees alone.   The assignment then proceeded, as follows :   "And the creditors of the said John Erskine junior and Madison D. Erskine, in consideration of the covenants contained in the foregoing deed of assignment, do severally accept said assignment, and approve of the terms and conditions thereof, and in consideration thereof, they do severally release and discharge the said John Erskine junior and Madison D. Erskine of and from all and singular their several claims and demands against them, of every name and nature," &c.   This release was executed by the creditors or some of them, including the petitioner.

The respondent acquired the title of the assignees, by purchase.

It appeared that no payment had been made on the notes secured by the mortgage.   But the respondent contended, that by the release, these notes, and consequently the mortgage, were discharged.   The petitioner contended, that the effect of the release was confined to the debts secured by the assignment, and that it was evident from the whole instrument, that these notes were not among the debts so secured and discharged.

The Court were to give judgment, upon these facts, according to the law.

*Sept* 27th.

*Wells* and *Alvord*, for the petitioner, cited to the point, that the release did not operate to discharge the notes secured by the mortgage, *Payler* v. *Homersham*, 4 Maule & Selw. 423 ; *Solly* v. *Forbes*, 4 Moore, 448 ;  *S. C.* 2 Brod. & Bing. 38 ; *Simons* v. *Johnson*, 3 Barn. & Adoph. 175 ;  *Bruen* v. *Marquand*, 17 Johns. R. 58 ; *Jackson* v. *Stackhouse*, 1 Cowen, 122 ;  *Lyman* v.  *Clark*, 9 Mass. R. 205 ;  *Emerson* v *Knower*, 8 Pick. 66 ;  *Nichols* v. *Arnold*, 8 Pick. 172 ; *Gloucester Bank* v. *Worcester*, 10 Pick. 528. [and see *Averill* v. *Lyman*, *post*, 346.]

*Brooks*, for the respondent.   The petitioner is not entitled to partition because he was never seised of the premises, either actually or constructively, there being some one else in possession claiming the whole.   *Bonner* v. *Proprs. Kennebec Purchase*, 7 Mass. R. 475 ; Co. Litt. 167 *a*.

The petitioner has no interest in the premises, he having released the debt secured by the mortgage. The release is in broad and comprehensive terms, and applies to several as well as joint debts. *Emerson* v. *Knower*, 8 Pick. 66 ; *Harrhy* v. *Wall*, 1 Barn. & Ald. 103 ; *Holmer* v. *Viner*, 1 Esp. R. 131. It is said, that no provision is made in the assignment, for the mortgage debt. But the assignment provides for the payment, *pro ratâ*, of the claims of the several creditors named in the schedule, *together with all others to whom the assignors were justly indebted*, upon their becoming parties to the assignment within a certain time. As the mortgage debt was mentioned in the instrument itself, there was no need of referring to it in the schedule. The release of the petitioner was wholly inoperative, unless it discharged that debt. The assignment makes provision for the liability of the petitioner to the bank, and he may have been induced to release his claim upon the real estate for that indemnity.

If the debt was discharged, no claim can be founded on the mortgage. *Vose* v. *Handy*, 2 Greenleaf, 322 ; *Gray* v. *Jenks*, 3 Mason, 520.

SHAW C. J. afterward drew up the opinion of the Court. The principal question in the present case is, whether the instrument executed by the plaintiff, as a creditor of Madison D. and John Erskine, is so to operate as to release the notes secured by the mortgage, under which he claims. It is now a general rule in construing releases, especially where the same instrument is to be executed by various persons, standing in various relations, and having various kinds of claims and demands against the releasee, that general words, though the most broad and comprehensive, are to be limited to particular demands, where it manifestly appears, by the consideration, by the recital, by the nature and circumstances of the several demands, to one or more of which it is proposed to apply the release, that it was so intended to be limited by the parties. And for the purpose of ascertaining that intent, every part of the instrument is to be considered.

As where general words of release are immediately connected with a proviso, restraining their operation. *Solly* v. *Forbes*, 2 Brod. & Bing. 38. So a release of all demands, then exist-

Rich
*v.*
Lord.

ng, or which should thereafter arise, was held not to extend to a particular bond, which was considered not to be within the recital and consideration of the assignment, and not within the intent of the parties. *Payler* v. *Homersham*, 4 Maule & Selw. 423. So where it is recited, that various controversies are subsisting between the parties, and actions pending, and that it had been agreed, that one should pay the other a certain sum of money, and that they should mutually release all act ons and causes of action, and thereupon such releases were executed, it was held, that though general in terms, the releases were qualified by the recital and limited to actions pending. *Simons* v. *Johnson*, 3 Barn. & Adolph. 175; *Jackson* v. *Stackhouse*, 1 Cowen, 126. So it has been held in Massachusetts, that where upon the receipt of a proportionate share of a legacy given to another, the person executed a release of all demands under the will, it was held not to apply to another and distinct legacy to the person himself. *Lyman* v. *Clark*, 9 Mass. R. 235.

In construing this release, according to the principles thus established, we think it manifest, that it was not intended to release the notes secured by the mortgage. The whole instrument is to be taken together. In this case the schedule is embodied into the instrument itself. The form of the instrument is in this respect peculiar. The first part, containing the assignment of the assignors, is executed by them; then come schedules, the acceptance of the assignment and the covenants of the assignees, which are separately executed by them; then the affirmation and acceptance by the creditors, and their release, which are separately executed by them. But they are all executed at the same time and constitute but one transaction. In the schedule of property assigned, which assignment, it will be borne in mind, was made by Madison D. Erskine and John Erskine junior, they include and describe the premises now in controversy, with this exception, viz. "One undivided half of said land, &c. are subject to a mortgage," &c., which is agreed to be the mortgage held by the plaintiff. By referring to this mortgage, it appears to be a mortgage of one undivided half of the premises by Madison D. Erskine, to secure to the

plaintiff, three notes signed by Madison D. and also by John Erskine junior.

By making this conveyance subject to that mortgage, it is very clear that it was not the intent of the parties, that by the same act the mortgage should be discharged. But if the mortgage was to be kept up undischarged, the only obvious purpose of so keeping it, was, that it should stand as a security for the payment of the notes, and this by a clear implication negatives the intent, that the notes were to be released. Taking the whole instrument together, therefore, we think it very clear, that it was intended to except this mortgage and the notes secured by it, from the operation of the release, and that the general words of release must be limited and controlled by this manifest intent.

If it be said, that the plaintiff had no other subsisting demand, to which the release would apply, it may be answered, that in a long and complicated instrument, containing many provisions and stipulations, it is not necessary to suppose, that every one executing it has interests upon which every clause can operate. It is a sufficient reason for executing it, that he has any right, interest or power, upon which any part can operate, and his execution shall be referred and applied to such right, interest or power. Here it appears, that the plaintiff and one of the assignees stood as sureties for the assignors, on a note of $500, at a bank, and that the assignment was made, among other things, in trust to indemnify the plaintiff against that suretiship. The plaintiff, therefore, standing as a *cestui que trust*, it was necessary, in order to give effect to the assignment for his benefit, that he should give his assent to it, by becoming a party. The motive and object of his becoming a party, therefore, may be presumed to have been, to give effect to the assignment for his benefit, *pro tanto*, and his execution, to express that assent.

The other points, we think, present no great difficulty. By the execution of the mortgage by one seised of the moiety, the plaintiff acquired a legal seisin and right of possession. The possession of the mortgager, or of the co-tenant, cannot be deemed adverse, but must be considered as the possession of the mortgagee.

Rich
*v.*
Lord.

On the other point, we can perceive no difficulty in making partition by metes and bounds, if necessary, it being always competent to the commissioners, to make a division as nearly equal as practicable, without injury to the estate, and to make up for any necessary inequality by the payment of money.

But should it become necessary to make a special partition, in some mode other than that by metes and bounds, there would be no difficulty in making such partition. Revised Stat. c 103, § 25, 26.

*The petitioner entitled to partition as prayed for.*